# Walker *v.* Crawford.

*Bill in Equity by Vendor, to subject Lands to Payment of Purchase-Money.*

1. *What is final decree ; when appeal lies.*—A final decree in a chancery cause, such as will support an appeal, is not necessarily the last decree rendered, by which all proceedings in the cause are terminated, and nothing is left open for the future judgment or action of the court; but it is a decree which determines the substantial merits of the controversy, all the equities of the case, though there may remain a reference to be had, or the adjustment of some incidental or dependent matter.

2. *Same.*—Under a bill filed to subject land to the payment of the purchase-money, against the original purchaser, who makes no defense, and a sub-purchaser in possession, who pleads payment and adverse possession under claim of title ; a decree rendered on a submission on pleadings and proof, declaring that the complainant is entitled to the relief prayed, and has a lien on the lands for the unpaid purchase-money, and ordering a reference to the register to ascertain and report the amount still due and unpaid, is not a final decree, such as will support an appeal, but is the proper interlocutory decree best adapted to such a case. The final decree is that which confirms the report of the register, ascertaining the amount of unpaid purchase-money, and orders a sale of the lands for its satisfaction.

3. *Rights and remedies of vendor, when purchase-money is unpaid.*—When the vendor of lands places the purchaser in possession, but retains the legal title as security for the payment of the purchase-money, all the essential incidents of a mortgage attach as between the parties ; and the vendor may maintain ejectment to recover the possession, or may subject the land by bill in equity to the payment of the purchase-money, although an action at law to recover it has been barred by the statute of limitations.

4. *Adverse possession by purchaser under executory contract.*—When a purchaser of lands, under an executory contract, is let into possession, not having paid the purchase-money, and not having received a convey-

[Walker v. Crawford.]

ance, he holds in subordination to the title of the vendor; and he can not defeat a suit in equity by the vendor to charge the lands with the payment of the purchase-money, by interposing the lapse of time as a defense, without showing that his possession was open and notorious, asserted as hostile to the right and title of the vendor, and continued long enough to bar a recovery at law under the statute of limitations.

5. *Adverse possession by sub-purchaser.*—Although the purchaser of lands under an executory contract, not having paid the purchase-money, nor received a conveyance, does not hold adversely to his vendor; yet, if he sells and conveys to a third person, who pays the stipulated price, is let into possession, and receives a conveyance of the title in fee-simple, such sub-purchaser may hold adversely to the original vendor, and may acquire a title under such adverse possession and the statute of limitations.

APPEAL from the Chancery Court of Tallapoosa.

Heard before the Hon. N. S. GRAHAM.

The bill in this case was filed on the 19th February, 1878, by Daniel Crawford, against William H. Thomas, George F. Walker, and the personal representatives and heirs at law of Willis Maxwell, deceased; and sought to subject certain lands, in the possession of the defendants, to the payment of the unpaid purchase-money due from said Thomas as the original purchaser. The lands were sold, with other tracts, at a time not shown by the record, by a commissioner appointed by the Chancery Court of Tallapoosa, under a decree of sale rendered by said court; and were bought at that sale by Daniel Crawford and Alexander White, each paying one-half of the purchase-money, and being equally interested in the land. They received a certificate of purchase from the commissioner, which was left by Crawford in the hands of White, in order that he might obtain a conveyance when the purchase-money was paid. On or about November 25th, 1850, White sold a half-section of the lands so purchased, being the part involved in this suit, to said W. H. Thomas, at the price of $1,500; putting him in possession, and executing to him a bond for titles. A part of the purchase-money was paid in cash, and for the residue, $500, Thomas gave his promissory note, payable to said White "by the first day of June, 1852, with interest from the 25th November, 1850;" the note reciting that its consideration "is for land lying in Tallapoosa county," which was particularly described. Some time during the year 1854, or 1855, White and Crawford had a settlement of all matters relating to their joint purchase of lands, when White relinquished all his interest in the lands to Crawford, and also transferred to him the said note of Thomas; and their purchase of the lands having been reported to the Chancery Court, in August, 1859, a deed for the lands was executed to Crawford, under the order of the court, by the register. The note of Thomas was made an exhibit to the bill, and showed several partial payments indorsed on it. On

[Walker v. Crawford.]

the 1st December, 1859, Thomas sold a portion of the land, containing about 218 acres, to one George Shealy, who paid the purchase-money, and was placed in possession; and he continued in the possession thereof until some time in 1866, or 1867, when he sold to one Levi Longshore, to whom a conveyance was executed by Thomas, on his payment of the purchase-money to Shealy. In 1875, at what time is not shown, Longshore sold and conveyed to said George F. Walker, who paid the purchase-money, and was in possession when the bill was filed.

A decree *pro confesso* was taken against Thomas. An answer to the bill was filed by Walker, denying the complainant's title and asserted lien; claiming to be a purchaser for valuable consideration paid, without any knowledge or notice of the rights asserted by the bill; and pleading adverse possession under color of title, the statutes of limitation of ten and twenty years, and payment. No defense was made by the other defendants.

The cause being submitted on pleadings and proof, the chancellor rendered a decree in vacation, which was filed in court on the 26th September, 1879, as follows: "It is adjudged, that the complainant is entitled to the relief he prays for in his bill. It is therefore ordered and decreed, that the complainant has a lien on the said lands," describing them, "for the unpaid purchase-money. It is further ordered and decreed, that it be, and is hereby, referred to the register, to ascertain and report, at the next term of this court, the amount yet due by the said W. H Thomas on the said note mentioned in the pleadings, for the purchase-money of said land, including interest thereon, deducting payments made," &c. Under this reference, the register reported, to a special term held in January, 1880, that the balance of purchase-money due and unpaid, with interest, was $1,623.64; and at the July term, 1880, the chancellor confirmed the report, overruling several exceptions filed by Walker, and rendered the following decree: "It is therefore ordered and decreed, that unless the said W. H. Thomas shall, within thirty days from the filing of this decree, pay, or cause to be paid, the said sum of money so reported to be due to the complainant, with interest thereon from January 20th, 1880, and the costs of this suit as taxed by the register (for which, if necessary, execution may issue), the said register proceed without delay to sell said lands."

The appeal was sued out, on. the 30th October, 1880, by Walker, who here assigns as error the decree declaring a lien, the overruling of his several exceptions to the register's report, and the final decree ordering a sale of the lands. A motion was submitted by the appellee to strike out the first assignment

[Walker v. Crawford.]

of error, on the ground that an appeal from that decree was barred by the statute of limitations.

CLOPTON, HERBERT & CHAMBERS, with whom was W. D. BULGER, for appellant.—(1.) The proof shows that neither Walker, nor any of those through whom he claims except Thomas, had actual notice of the lien asserted by Crawford; and if they are chargeable with constructive notice, they had a right to presume that the outstanding note was paid, more than twenty-five years having elapsed between its maturity and the filing of the bill.—*Goodwin v. Baldwin,* 59 Ala. 127; *McArthur v. Currie,* 32 Ala. 75. (2.) But the appellant and those through whom he claims have been in the continuous and uninterrupted possession of the land since 1858, or 1859, each having paid the purchase-money, and received a conveyance with warranty of title; and though the possession of Thomas may not have been adverse, theirs has been, and has ripened into a title by the lapse of time.—*Tayloe v. Dugger,* 66 Ala. 444; *Hunter v. Parsons,* 2 Bailey, S. C. 59.

WATTS & SONS, and L. E. PARSONS, Jr., *contra.*—(1.) The decree settling the equities of the parties was rendered more than twelve months before the appeal was sued out, and the statute of limitations bars its revision.— *Waldrop v. Carnes,* 62 Ala. 374; *Garner v. Prewitt,* 32 Ala. 13; *Bradford v. Bradley,* 37 Ala. 453; *Munter & Faber v. Linn,* 61 Ala. 492. (2.) Thomas had no title, but held under and in recognition of Crawford's title; and his possession could not become adverse to Crawford, though open, notorious, and asserted as hostile, unless notice thereof was brought home to Crawford; nor could he convey to another any greater right or title than he himself possessed. The possession was taken and held by Thomas under and in pursuance of his contract of purchase, and neither he nor his vendees could change the character of that possession, as against Crawford, without proof that he had knowledge or notice thereof; and until such adverse possession was shown, the statute of limitations did not begin to run against Crawford. *Coyle v. Wilkins,* 57 Ala. 108, and authorities there cited; *Collins v. Johnson,* 57 Ala. 304; *Ivey v. McQueen,* 36 Ala. 308; *Boyd v. Beck,* 29 Ala. 703; Perry on Trusts, § 864; *Kane v. Bloodgood,* 7 John. Ch. 90; *Baker v. Whiting,* 3 Sumner, 475; Jones on Mortgages, vol. 2, §§ 1159, 1211; *Robertson v. Wood,* 15 Texas, 1; *Turner v. Smith,* 11 Texas, 620; *Oliver v. Piatt,* 3 Howard, 333; Story's Equity, § 1028 *b.* A purchaser is bound to examine into the title of his vendor, and is chargeable with notice of all defects appearing on the face of his deeds; and he can not claim the protection accorded to

a *bona fide* purchaser without notice, unless his vendor had a legal title, and was in possession under it.—*Boone v. Chiles*, 10 Peters, 211; *Bradford v. Harper*, 25 Ala. 237; *Masterson v. Pullen*, 62 Ala. 153; *Thames & Co. v. Rembert*, 63 Ala. 561; *McCormick v. Buford*, 57 Ala. 428; *Thweatt v. Johnson*, 18 Ala. 741; *Witter v. Dudley*, 42 Ala. 616; Sugden on Vendors, vol. 2, 778.

BRICKELL, C. J.—A motion is made by the appellee, to strike out the first, second and eighth assignments of error, which relate to the decree rendered on the 15th September, 1879, declaring the complainant was entitled to relief, and had a lien on the lands for the purchase-money due from Thomas, referring it to the register to ascertain and report to the succeeding term the amount which was due. The ground of the motion is, that this decree was in its nature final, and would have supported an appeal, and, as more than twelve months had elapsed after its rendition, before the suing out of the present appeal, it is not now open to revision.

1. Except in a few cases, the statutes limit an appeal to final judgments or decrees. In the application of the statutes, the term *final decree* has not been taken in its strict, technical sense. It is not necessarily the last decree which may be rendered, which, instead of adjourning the further consideration of the cause, terminates all proceedings in it, leaving open no further question or direction for the future judgment of the court. *Jones v. Wilson*, 54 Ala. 50. The decree which determines the substantial matter in controversy, settling what is termed *the equities of the case*, ascertaining and declaring the rights of the parties, though there may still be some incidental or dependent matter to be adjusted, or ulterior proceedings are contemplated and necessary as a mode of execution, is a final decree, which will support an appeal.—1 Brick. Dig. 89, §§ 85–87. All the equities of the case must, however, be settled by the decree— the substantial merits of the controversy must be determined; if these are settled only partially, the decree is not final. "The principle to be extracted from our decisions," said C. J. WALKER, in *Garner v. Prewitt* (32 Ala. 18), "is, that if all the equities between the parties are settled, and there remains only a reference to be had for the ascertainment of the amount, the decree is final. We have no decision which characterizes that as a final decree, which only settles a part of the equities in the case."

2. The equities, the merits of this case, involved two questions; the *first* of which was, whether Thomas, the first purchaser of the lands, was indebted to the complainant for the purchase-money; the *second*, whether the long, continuous pos-

session of the lands, under a conveyance from Thomas, purporting to convey the legal estate, was not a bar to the claim of the complainant to charge the lands, if any part of the purchase-money was unpaid. The determination of either of these questions against the complainant was fatal to his right to relief—the one as fatal as the other. It may be, the decree we are considering indicates very clearly that the second of these questions was adjudicated favorably to the complainant. The first was not settled, but depended on the result of the reference which was ordered. After the reference, upon the report of the register, the cause was, of necessity, again set down for hearing, and the existence of the debt the subject of litigation. That can not, in any proper sense, be a final decree, which leaves open and undetermined a vital question, upon which the judgment of the court is in the future to be pronounced. A decree may be final, supporting an appeal, when the rights of the parties are ascertained as to the substantial matters of controversy, though there may be a reference to the register of matters of account, which are merely incidental, or dependent upon the relief the decree grants. In all such cases, however the matter of account may result, the decree granting the principal relief would be unaffected. In no respect, can the decree we are considering be regarded as final. It is the decree, or interlocutory order, best adapted to a case of this kind, indicating the relief which would be granted when the cause was ripe for final decree, if it was ascertained any part of the purchase-money remained unpaid. The final decree is that which confirms the report of the register, ascertaining the amount of the unpaid purchase-money, and ordering a sale of the lands for its satisfaction. The motion must be denied.

3.   The vendor of lands, parting with the possession, and contracting to convey the legal estate only upon the full payment of the purchase-money, carves out for himself a security having the qualities and incidents of a mortgage. There can be no just and proper distinction drawn between a conveyance of the lands and a mortgage contemporaneously executed, to secure the payment of the purchase-money, and the reservation, by agreement, of the legal estate to secure its payment. All our decisions concur, that when the vendor retains the legal title, as a security for the payment of the purchase-money, all the essential incidents of a mortgage attach, and the parties stand in a relation closely resembling that of mortgagor and mortgagee.—*Bankhead v. Owen*, 60 Ala. 457. The vendor, having the legal estate, may maintain ejectment for the recovery of possession, compelling the vendee to resort to a court of equity for redemption, or, rather, for a specific performance, which can be obtained only upon the payment of the purchase-money.

[Walker v. Crawford.]

Until the payment of the purchase-money, the vendee has but an imperfect equity, which, though it may be devisable, or inheritable, is not an estate or interest of which courts of law can take notice.

The security or lien of the vendor, retaining the legal estate, is not destroyed, or impaired, because an action at law for the recovery of the purchase-money is barred by the statute of limitations.—*Relfe v. Relfe*, 34 Ala. 500; *Driver v. Hudspeth*, 16 Ala. 348; *Shorter v. Frazer*, 64 Ala. 74. The vendee entering into possession under an executory agreement for a future conveyance, his possession is in subordination, not adverse, to the title of the vendor; and he can not, in the absence of a possession open and notorious, asserted as hostile to the right and title of the vendor, interpose the lapse of time to defeat the equity to charge the lands with the payment of the purchase-money.—*Seabury v. Stewart*, 22 Ala. 207; *Relfe v. Relfe*, 34 Ala. 500; *McQueen v. Ivey*, 36 Ala. 308; *Ormond v. Martin*, 37 Ala. 598; *Farley v. Smith*, 39 Ala. 38. In *Relfe v. Relfe, supra*, it is said: "If the vendee is regarded as holding under the vendor—if his possession is the possession of the vendor—it would be a violation of all precedent and principle to allow the acquisition of title by the lapse of time. It would be like making lapse of time the origin of title in the tenant, against the landlord." Under the facts of this case, if Thomas had remained in possession, it must be admitted that he could not invoke the statute of limitations, or the presumptions arising from the lapse of time, to protect his possession against the demand of the appellee to charge the lands with the unpaid purchase-money. In his possession there was never any element of hostility to the title of the vendor, and there were repeated admissions and recognitions that the purchase-money was unpaid, accompanied with promises of payment, repelling any presumption of payment which could, in their absence, have been drawn from the lapse of time.

5. Any possession, however rightfully it originates, may be converted into a possession hostile and adverse to the title of the true owner; and if it is actual, visible, notorious, distinct, hostile, continuous for the period prescribed by the statute of limitations as a bar to an entry, or to an action for the recovery of possession by the true owner, it operates not only to bar the entry or action, but vests the possessor with title.—*Farmer v. Eslava*, 11 Ala. 1028; *Howell v. Hair*, 15 Ala. 194; *Jones v. Jones*, 18 Ala. 248. The possession of a tenant in common, not denying the title of his companions, is the possession of all, and, however long continued, is not adverse. But, if openly and notoriously he asserts title in himself exclusively, denying the title of his companions, taking to himself the rents and profits,

the possession is adverse, and if continued for the period prescribed as a bar to entry by the statute of limitations, the title of his companions is defeated.—*Abercrombie v. Baldwin*, 15 Ala. 363. Or, if he assume to convey the entire estate, the conveyance is doubtless void as to his companions. But, if, under the conveyance, the grantee enters into possession, openly claiming the entire estate, the possession is adverse, and if continued for the length of time prescribed as a bar to entry, the title of the companions is defeated, and that of the grantee is, as to them, indefeasible.—*Abercrombie v. Baldwin, supra ; Riggs v. Fuller*, 54 Ala. 141.

The possession of Thomas was not adverse ; but he made sale and conveyance of the part of the premises in controversy to Shealy, receiving the purchase-money with the exception of a small sum comparatively. Shealy sold and conveyed to Longshore, and he to Walker ; and the possession under these sales and conveyances had been continuous for a period of nearly twenty years, accompanied with a claim of the entire, exclusive, legal estate. The conveyance by Thomas, though purporting to pass the fee-simple, was, it is true, operative to pass only the imperfect equity he had in the lands. The subsequent conveyances had no other or larger operation. These conveyances, nevertheless, were color of title, asserted as operative to pass, and as actually passing, the entire legal estate, inconsistent with, and antagonistic to the title of the true owner ; and the possession under them was hostile and adverse to his title. *Miller v. State*, 38 Ala. 600 ; *Tayloe v. Dugger*, 66 Ala. 444. The possession having been open, visible, notorious, and continuous, for a period of more than ten years, barring the entry of the true owner, the title has become vested in the present appellee, the last successor to the possession.—*Riggs v. Fuller, supra.*

The distinction between the present case and that of *Coyle v. Wilkins*, 57 Ala. 108, is, that in the latter case the entry by the alienee of the mortgagor was in subordination to the title of the mortgagee, with notice of it, and there was an absence of all evidence of a holding in hostility to it. There was, here, a want of all notice of the infirmity of Thomas' title, or of the equity of the complainant. The sales and conveyances were of the entire fee, for a valuable consideration ; and under them there was entry, continuous possession, and an actual, *bona fide* claim of title. If it was as *bona fide* purchasers of the legal estate the parties were claiming protection, they would be charged with notice of the nature and source of Thomas' title, and notice of the equity of the appellee. The rules of law which would then prevail, have no application, when an adverse possession, founded on color or claim of title, is asserted

[Moore v. Randolph's Adm'r.]

as clothing the possessor with the right of possession, and with a title which cannot be questioned, without infringing the statute of limitations.—*Clapp v. Bromaghan*, 9 Cowen, 556; *Ewing v. Bennett*, 11 Peters, 41; *Wright v. Mattison*, 18 How. 50. The inquiry is into the character and length of possession, not into the strength or rightfulness of the title under which it was acquired.

Errors have been assigned by the appellant Walker only, the other parties against whom the decree was rendered having been summoned, and refusing to join. As to the appellant, and the lands claimed by him, the decree of the chancellor must be reversed, with instructions to dismiss the bill. The cause will be remanded, that the decree may be enforced against the other lands not claimed by the appellant.